UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CHARLES SHOCKLEY, )
)
    Plaintiff, ) Case No.
) 5:18-cv-010-JMH
v. )
) **MEMORANDUM OPINION**
PORTFOLIO RECOVERY ASSOICATES, ) **AND ORDER**
LLC, et. al. )
)
    Defendants. )
)

\*\*\*

This matter is before the Court upon Plaintiff Charles Shockley's motion for default judgment against Defendant United Adjustment Corporation ("UAC"). [DE 15]. Plaintiff has demonstrated that Defendant is liable for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), but Plaintiff has not adequately established the appropriate amount of statutory damages. As a result, Plaintiff's motion for default judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. Procedural History

On January 10, 2018, Shockley filed the Complaint in this matter against Defendants Portfolio Recovery Associates, LLC and UAC alleging violations of the FDCPA and the FCRA. [DE 1]. On February 8, 2018, Shockley moved to dismiss Defendant Portfolio

1

Recovery Associates but wished to continue this action against UAC. [DE 7]. Plaintiff's Motion to Dismiss Portfolio Recovery Associates was granted on February 13, 2018. [DE 8].

Subsequently, Shockley moved for entry of default against UAC. [DE 11]. The Clerk entered default because the record indicated that a Summons and Copy of the Complaint was served upon UAC and UAC had failed to plead or otherwise defend the action. [DE 13].

Now, Shockley moves for default judgment pursuant to Fed. R. Civ. P. 55(b)(1) or, in the alternative, pursuant to Fed. R. Civ. P. 55(b)(2). [DE 15]. Shockley is only pursuing statutory damages, costs of the action, and attorneys' fees.

## II. Standard for Default Judgment

In a motion for default under Rule 55, "the well pleaded factual allegations in the Complaint, except those relating to damages, are taken as true." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 847 (E.D. Mich. 2006) (citing *Thomson v. Wooster*, 114 U.S. 104 (1885); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995)). If the allegations in the Complaint are sufficient to support a finding that the Defendant violated the provisions of the FDCPA or FCRA, judgment should be entered for the Plaintiff.

A default judgment may be entered either by the Clerk or by the Court. The Clerk may enter default judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1). Alternatively, "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Here, Shockley's motion for default judgment is made pursuant to Fed. R. Civ. P. 55(b)(2). The maximum amount of statutory damages that may be recovered under the FDCPA and the FCRA is $1,000 but the actual amount of statutory damages to which the plaintiff is entitled is within the discretion of the court. 15 U.S.C. § 1692(a)(2)(A); 15 U.S.C. § 1681(a)(1)(A). Thus, where statutory language sets out a minimum and maximum amount for an award of statutory damages, the motion for default must be directed to the court. *See, e.g.*, *Charvat v. NMP, LLC*, No. 2:09-CV-209, 2012 WL 2577489, at *2 (S.D. Ohio July 3, 2012).

Additionally, the Court may conduct an evidentiary hearing on damages or to establish the truth of any allegation by evidence. Fed. R. Civ. P. 55(b)(2). Damages that are unliquidated or not susceptible to mathematical computation must be proven by the Plaintiff. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "A party who has been found liable by default judgment 'still has the opportunity to respond to the issue of damages.'" *New London Tobacco Market, Inc. v.*

*Kentucky Fuel Corp.*, No. 12-CV-91-GFVT, 2017 WL 1227926, at *2 (E.D. Ky. Mar. 31, 2017) (citing *Antoine*, 66 F.3d at 110). "Ordinarily, the District Court must hold an evidentiary proceeding in which the defendant has the opportunity to contest the amount of damages." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995) (quoting Greyhound, 973 F.2d at 158).

### III. Analysis

**A. Default Judgment Under the FDCPA**

The FDCPA prohibits a wide range of specific conduct, but it also prohibits any harassing, unfair, or deceptive debt collection practices. S. Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698; *see generally* 15 U.S.C. §§ 1692d-1692f. As a result, the Act is "extraordinarily broad." *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (quoting *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)). "To determine whether conduct fits within the broad scope of the FDCPA, the conduct is viewed through the eyes of the 'least sophisticated consumer.'" *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (quoting *Barany-Snyder*, 539 F.3d at 333).

**(1) Liability**

15 U.S.C. § 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the

failure to communicate that a disputed debt is disputed." To establish a violation under § 1692e(8):

1) The plaintiff must be a "consumer" as defined by the FDCPA;

2) The "debt" must arise out of transactions that are "primarily for personal, family, or household purposes";

3) The defendant must be a "debt collector" as defined by the FDCPA; and

4) Plaintiff must present facts demonstrating that the defendant communicated information that it either knew or should have known was false to a third party.

See *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012); *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009); *Stephens v. Premiere Credit of N. Am., LLC*, No. 3:16-CV-007-GNS-CHL, 2018 WL 505593, at *3 (W.D. Ky. Jan. 22, 2018).

First, under the FDCPA, a "'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Shockley is a natural person who was allegedly obligated to pay a debt as reflected by the UAC tradeline.

The second element is also satisfied. Paragraph 35 of the Complaint says, "Upon information and belief, the UAC tradeline constitutes a 'debt' within the meaning [of] the FDCPA." [DE 1 at 5, Page ID # 5]. Since UAC has failed to respond to this

allegation, for the purposes of default judgment, the Court construes this factual allegation as true.

Third, paragraphs 6 and 7 of the Complaint confirm that "UAC is an Indiana Corporation . . . [whose] primary purpose is the collection of debts as defined by the FDCPA." [*Id.* at 2, Page ID # 2]. Accepted as true, this factual allegation satisfies the third element of a violation of the FDCPA.

Fourth, and finally, Shockley alleges that UAC transmitted his credit information to one or more consumer reporting agencies. [DE 1 at 4, Page ID # 4]. Even so, Shockley maintains that he had disputed the debt reflected on the UAC tradeline because he thought that the debt had been discharged in a Chapter 7 bankruptcy proceeding. [*See id.* at 5, Page ID # 5]. At paragraph 12 of the Complaint, Shockley claims that he "sent dispute letters to the furnishers of this erroneous information . . . ." [*Id.* at 2, Page ID # 2]. Additionally, Shockley alleges that after he disputed the debt on the UAC credit line, the consumer reporting agencies "sent UAC notice of Mr. Shockley's disputes . . . ." [Id. at 5, Page ID # 5]. These facts, accepted as true, demonstrate that UAC violated 15 U.S.C. § 1692e(8) when UAC failed to notify consumer reporting agencies that Shockley's debt reflected on the UAC credit line had been disputed. [*Id.*].

Ultimately, accepting the well pleaded factual allegations in Shockley's Complaint as true, Shockley has demonstrated that UAC is liable for violation of 15 U.S.C. § 1692e(8).

**(2) Damages**

A debt collector who violates the FDCPA is liable to the aggrieved person for: (1) actual damages sustained; (2) statutory damages not to exceed $1,000; and (3) costs of the action and reasonable attorney fees. 15 U.S.C. § 1692k(a). The maximum amount of statutory damages that may be awarded under the FDCPA is $1,000 per proceeding. *See Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994). The plaintiff must only demonstrate a single violation of the FDCPA to recover damages. *Cirkot v. Diversified Systems*, 839 F. Supp. 941 (D. Conn. 1993).

Shockley seeks to recover only statutory damages, costs, and fees. [*See* DE 15]. The FDCPA requires the Court to consider three factors in determining the amount of statutory damages: (1) "the frequency and persistence of noncompliance by the debt collector," (2) "the nature of such noncompliance, and [(3)] the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1); *Mann v. Acclaim Financial Services, Inc.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004).

Here, UAC is still entitled to respond on the issue of damages even though the Court had found UAC liable for violations of the FDCPA. *New London Tobacco Market, Inc.*, 2017 WL 1227926, at *2

7

(citing *Antoine*, 66 F.3d at 110). Additionally, Shockley has not provided sufficient information for the Court to consider the three factors in § 1692k(b)(1) for determining the amount of statutory damages. Finally, statutory damages do not constitute a sum certain because the amount of statutory damages awarded is within the discretion of the Court. *See, e.g.*, *Charvat*, 2012 WL 2577489, at *2. Thus, an evidentiary hearing is required to determine the appropriate amount of statutory damages.

**B. Default Judgment Under the FCRA**

The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). 15 U.S.C. § 1681s-2 seeks to prevent furnishers of credit information from spreading inaccurate consumer-credit information. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012). To that end, the FCRA requires furnishers of credit information to provide consumer reporting agencies with accurate credit information. § 1681s-2(a). Additionally, the FCRA imposes certain duties upon furnishers of consumer-credit information when they receive notice of a dispute from a consumer reporting agency. § 1681s-2(b); *see Boggio*, 696 F.3d at 614-15. Finally, the FCRA expressly creates a private right of action against a furnisher of information who fails to comply with one of the statutory duties identified in § 1681. *Boggio*, 696 F.3d at 618.

**(1) Liability**

To establish a willful violation of the FCRA under § 1681s-2(b) the Plaintiff must show:

1) That the furnisher of consumer-credit information received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed; and

2) That after receiving notice of the dispute, the furnisher of information acted with reckless disregard in performing its duties under § 1681s-2(b).

*Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 912 (S.D. Ohio 2013); *see Safeco*, 551 U.S. at 57; *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853–54 (6th Cir. 2004); *Boggio*, 696 F.3d at 614-20.

Here, Shockley alleges that UAC violated the FCRA by willfully failing to conduct a proper investigation after being informed of Shockley's dispute with the UAC tradeline by consumer reporting agencies. [DE 1 at 7, Page ID # 7].

First, accepting the factual allegations in Shockley's complaint as true, Shockley has satisfied the first element of an FCRA violation. Shockley alleges that UAC furnished credit information to consumer reporting agencies for the purpose of collecting a debt. [Id. at 5, Page ID # 5]. Subsequently, Shockley disputed this debt with the consumer reporting agencies because he believed the debt was discharged in a bankruptcy proceeding.

[*Id.*]. Additionally, Shockley alleges that the consumer reporting agencies sent UAC notice of Shockley's disputes regarding the UAC tradeline, triggering UAC's statutory duty to investigate under the § 1681s-2(b). [*Id.*].

Second, Shockley claims that, after receiving notice of Shockley's dispute with the UAC tradeline, UAC acted in reckless disregard of its duties under the FCRA.

After receiving notice of a credit dispute, the FCRA requires a furnisher of information to "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). The investigation undertaken must be a reasonable investigation that is more than a merely cursory review. *Boggio*, 696 F.3d at 616. Additionally, a furnisher of information must "review all relevant information provided by the consumer reporting agency" and then "report the results of its investigation to the consumer reporting agency." § 1681a-2(b)(1)(B), (C), *Boggio*, 696 F.3d at 616-17. Finally, if the investigation finds that the credit information is incomplete or inaccurate, the furnisher must "report those results to all other consumer reporting agencies" and "modify," "delete," or "permanently block reporting of" information that it found to be inaccurate or incomplete. § 1681s-2(b)(1)(D), (E); *Boggio*, 696 F.3d at 617-19.

Here, Shockley alleges that UAC failed to note Shockley's dispute of the UAC tradeline when it sent information to consumer

reporting agencies. [DE 1 at 5, Page ID # 5]. Additionally, Shockley claims that UAC failed to report the results of its investigation to consumer reporting agencies. [*Id.*].

Accepting these factual allegations as true, Shockley has satisfied the second and final element to demonstrate a violation of the FCRA. UAC received notice of Shockley's dispute from credit reporting agencies and failed to report the results of its investigation to consumer reporting agencies, violating its duty under § 1681s-2(b)(1)(D). UAC's duty to report the findings of its investigation is both clear under the statute and compliance with the duty requires the expense of minimal time or effort. As a result, accepting Shockley's factual allegations as true, UAC's failure to report the findings of its investigation to consumer reporting agencies reflects more than a merely careless reading or its duties and rises to the level of a willful violation of the FCRA. *See Safeco*, 551 U.S. at 57, 69.

**(2) Damages**

A consumer that establishes that a furnisher of credit information willfully violated one of the duties outlined in the FCRA may recover actual or statutory damages, punitive damages, costs of the action, and reasonable attorney fees. 15 U.S.C. § 1681n. Statutory damages may be awarded in an amount between $100 and $1000. § 1681n(a)(1)(A).

Here, Shockley is only pursuing statutory damages, costs, and attorneys' fees. Since the amount of statutory damages is within the discretion of the Court, an evidentiary hearing is required to allow the Defendant to respond on the issue of damages. *New London Tobacco Market, Inc.*, 2017 WL 1227926, at *2 (citing *Antoine*, 66 F.3d at 110).

## IV. Conclusion

In sum, after accepting the factual allegations in Shockley's Complaint as true, Shockley has demonstrated that UAC is liable for violating the FDCPA and the FCRA. Even so, statutory damages do not constitute a sum certain since the amount of statutory damages awarded is within discretion of the Court subject to statutory limits. As a result, an evidentiary hearing to determine the appropriate amount of statutory damages is required.

Accordingly, **IT IS ORDERED** as follows:

(1) Shockley's motion for default judgment and damages against Defendant United Adjustment Corporation [DE 15] is **GRANTED IN PART** and **DENIED IN PART**;

(2) Shockley's motion for default judgment against Defendant United Adjustment Corporation for violating the FDCPA, 15 U.S.C. § 1692e(8), is **GRANTED**;

(3)  Shockley's motion for default judgment against Defendant United Adjustment Corporation for violating the FCRA, 15 U.S.C. § 1681s-2(b), is **GRANTED**;

(4)  Plaintiff's request for a total award of $2,000 in statutory damages is **DENIED**.  Pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing will be scheduled by  Court order to determine the appropriate amount of statutory damages;

(5)  At least two weeks before the evidentiary hearing on damages, the parties **SHALL**:

> (a)  file a list of exhibits intended to be used at the hearing;
>
> (b)  premark and display to opposing counsel or the opposing party all exhibits intended to be used at the hearing;
>
> (c)  file a witness list, if applicable, with a brief summary of the expected testimony of each witness;
>
> (d)  file a pre-hearing memorandum brief containing a succinct statement of facts and law as related to the damages sought in this case

(6)  At least one week before the hearing on damages, the parties shall, if applicable, raise any objections or  make  any motions related to the evidence to be presented  at the hearing on damages;

13

(7)    That this matter is set for **an evidentiary hearing on the issue of damages on Monday, December 10, 2018, at  1:30 p.m.**, pending further orders of the Court.  The parties shall be prepared to address the relevant legal standards pertaining to the appropriate amount of statutory damages; and

(8)    The Clerk **SHALL** send Defendant United Adjustment Corporation a copy of this Memorandum Order and Opinion at the same address where United Adjustment Corporation  was  previously served in this matter.

This the 1st day of November, 2018.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge